**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1255-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GARY SUTTLE, a/k/a BOBBY
B. SUTTLE, and GARY WILLIAMS,

    Defendant-Appellant.

_____

> Submitted January 8, 2019 – Decided January 22, 2019
>
> Before Judges Fisher and Geiger.
>
> On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 04-10-1327.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).
>
> Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (James C. Brady, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals the denial of his post-conviction relief (PCR) petition. We find no error and affirm.

Lois Zukowitz was murdered in her Elizabeth apartment on March 11, 2004. Police investigation led to defendant, who was charged with first-degree murder, N.J.S.A. 2C:11-3(a), and possession of a weapon (a hammer) for an unlawful purpose, N.J.S.A. 2C:39-4(d). Defendant's first trial, which occurred in April 2008, produced an acquittal on the weapons offense and a hung jury on the murder charge. A second trial in July 2008 resulted in defendant's conviction of first-degree murder and a fifty-five-year prison term. Defendant appealed, and we reversed and remanded for a new trial. State v. Suttle, No. A-2417-08 (App. Div. June 10, 2011). At a third trial, which occurred in June and July 2012, defendant was again convicted of first-degree murder, and, in August 2012, he was again sentenced to a fifty-five-year prison term subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant appealed, and we affirmed the conviction and the fifty-five-year NERA prison term but remanded for amendment of the judgment to eliminate a separate thirty-year parole disqualifier. State v. Suttle, No. A-1692-12 (App. Div. Feb. 2, 2016).

Defendant filed a PCR petition in July 2016, arguing attorney ineffectiveness. The PCR judge denied relief, and defendant appeals, arguing

the PCR judge erroneously denied relief without conducting an evidentiary hearing. We find insufficient merit in defendant's arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(2). We add only the following comments.

To put defendant's ineffectiveness claims into context, some understanding of the evidence adduced during his third trial is warranted. The State put on witnesses and offered evidence that linked defendant to Lois's murder. The State showed that, at sometime after 10:00 p.m., on March 11, 2004, Lois's neighbor heard: her scream; a male voice command her to "shut up"; and noises that suggested someone was being punched. The neighbor called 9-1-1 sometime after 11:00 p.m., and by 11:25 p.m., police arrived, finding Lois dead and her body face down in a pool of blood. A bloody towel was found, as well as numerous blood-stained areas in the apartment. Near Lois's body, police observed a bloody impression from a Reebok sneaker. Lois's bedroom and kitchen appeared to have been ransacked.

Testimony was offered to show Lois was struck numerous times with a blunt instrument. Police found on her bed a black rubber-handled claw hammer wrapped in a plastic bag. A small clump of hair was found on the claw end; blood was found on the striking end. No fingerprints were found on the hammer,

3

but a mixture of DNA was found on the hammer's handle. The State offered testimony that Lois could not be excluded as a potential contributor to that DNA mixture and that the other DNA probably came from a female. Defendant was excluded as a contributor to that DNA.

In the apartment, police found a black jacket with a fur collar. The jacket contained a set of keys. Investigators later determined that a key in the jacket was for the Mravlag Manor apartment of Joseph Lopez and his mother, Nilda Vargas. Vargas was defendant's girlfriend at the time. When police entered the Lopez-Vargas apartment, a partially-clothed defendant appeared from one of the rooms. Lopez went to get him some clothes and when Lopez returned with a pair of Reebok sneakers, defendant said to him, "[n]o, not those shoes." Aware of the shoe print left in Lois's apartment, police became suspicious about defendant's comment to Lopez; they obtained a search warrant for the apartment and seized the Reeboks. No blood was found on them, but, at trial, the prosecution offered evidence that the bloody shoe prints left at the crime scene were made by Reeboks.

In his testimony, Lopez confirmed the jacket was his and the keys belonged to defendant. Both Lopez and Vargas provided testimony that suggested defendant left the apartment on the day of Lois's murder and did not

return until March 17, 2004. According to Lopez, when defendant departed he was in possession of Lopez's jacket but when he returned, he had neither the jacket nor his keys. Lopez testified that when defendant returned after the week's absence, he said he had been "locked up" and that the jacket was taken at the jail.

The State called Arthur Barber, who testified that defendant told him "he had gotten himself in a little bit of trouble and he needed to get out of town." Barber also testified that defendant admitted to killing a "white woman" but that he did not mean to do it.

The State also called two of Lois's neighbors who testified they saw Lois on the afternoon of her murder with an African-American man wearing a black coat with a fur hood. Two other women testified they had accompanied Lois on separate occasions to buy heroin from an African-American man who lived in Mravlag Manor. In addition, the State offered testimony that police obtained statements from others: Corrine Hartley, and her brother James Hartley, as well as Deborah Silverstein, who was a friend of Lois and who stated she had observed James Hartley with Lois in the weeks leading up to the murder.

Defendant called Corrine Hartley to testify. She testified that she did not remember giving a statement to the police. But the statement she gave was read

to the jury during a detective's testimony and included information such as: shortly after the murder her brother James gave her a bag of dirty clothes, which included a pair of bloody jeans; James owned sneakers that were "either Reebok, or Nike or Avia"; and James was often in the building where Lois lived. Evidence also suggested that James attended the same methadone clinic as Lois.

In arguing ineffectiveness, defendant contends his trial attorney failed to conduct a proper investigation which, in his view, required that Corrine Hartley, James Hartley, and Deborah Silverstein be interviewed. He also argues that his trial attorney should have obtained DNA from them to determine whether it matched the DNA on the hammer. And he argues that his trial attorney failed to adequately cross-examine Barber. We find no merit in these arguments.

The judge soundly rejected defendant's argument regarding the sufficiency of counsel's pretrial investigation concerning Corrine and James Hartley, and Deborah Silverstein:

> [Defendant] has not established what would have been revealed if trial counsel were to have interviewed the[m]. [Corrine] and [Deborah] gave recorded statements to the police. These were certainly available to the defense through discovery. [Corrine] was interviewed by the police, and the notes of that interview were presumably available to the defense through discovery. [James's] father was interviewed by the police and provided an alibi for his son. [Defendant] has not come forward with any information

6

from these witnesses that differs from that already in the record.

Furthermore, both [Corrine] and [Deborah] testified at trial. [Corrine's] trial testimony and what appears to be her whole, if not a substantial portion, of her March 18, 2014 statement were placed before the jury. Accordingly, all of her favorable testimony about [James's] purported incriminating comments and blood on his clothes were presented to the jury.

[Deborah] was called as a witness during [defendant's] case in chief and was asked about her relationship with James Hartley.

The State attempted to call [James] as a witness on rebuttal, but he could not be located. It is highly doubtful that his testimony at trial would have differed from his statements to the investigating officers or been as favorable to [defendant] as the inferences, which were drawn from his statements to [Corrine].

As noted above, [defendant] has not established that an "interview" of these witnesses[] would have presented information that was either not before the jury already, or more favorable than the evidence presented to the jury.

For these reasons, the judge denied this aspect of the PCR petition. We agree that this result was compelled by a proper application of the Strickland/Fritz test.[1]

---

[1] Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42 (1987).

The PCR judge also properly rejected defendant's contentions regarding trial counsel's decision not to obtain DNA samples from Corrine and James Hartley and Deborah Silverstein. As the judge recognized, the prosecution provided testimony that the DNA belonged to a female, thus exculpating him from that link to the hammer; for the same reason it exculpated James Hartley. But, rather than run the risk that samples from the other potential targets of defendant's third-party guilt theory would exculpate them as well, defense counsel "used the lack of DNA testing," as the PCR judge said, "skillfully to his advantage," pointing out a number of passages from defense counsel's summation along those lines. Again, because counsel took a reasonable tactical approach to this circumstance, Strickland, 466 U.S. at 689, defendant was unable to present a prima facie case of ineffectiveness.

And lastly, we agree with the PCR judge's analysis of the sufficiency of the Barber cross-examination. The nature and extent of cross-examination are matters that fall within the "broad zone of attorney discretion." State v. Hightower, 120 N.J. 378, 432 (1990). But, even if we were to second guess trial counsel in this regard, the only fair conclusion is that counsel's cross-examination was rigorous and productive. Barber testified that defendant's incriminating statements were made to him around Labor Day 2004, yet counsel

elicited through cross-examination testimony that revealed such a claim was false because defendant was incarcerated from March 24, 2004 until January 2005; Barber had no opportunity to speak with defendant at the time he claimed defendant made incriminating statements. This and other inconsistencies in Barber's testimony were revealed to great effect not only during cross-examination but during counsel's summation as well.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1255-17T3